**CAVAC COMPANIA ANONIMA VENE-ZOLANA de ADMINISTRACION y COMERCIO, Plaintiff,**

v.

**BOARD FOR the VALIDATION OF GER-MAN BONDS IN THE UNITED STATES; and Douglas Hartman, Dr. Jur Walther Skaupy, members, Erwin Blumenthal, William McCarthy, deputy members, David A. Stretch, Chairman of the Board for the Validation of German Bonds in the United States (Bere-inigungsstelle fuer deutsche Bonds in den Vereinigten Staaten); Vereinigte Stahlwerke Aktiengesellschaft (United Steel Works Corporation) et al., Defend-ants.**

United States District Court
S. D. New York.
Oct. 27, 1960.

Supplemental Opinion Nov. 2, 1960.

Graubard & Moskovitz, New York City, for Cavac Compania Anonima Venezolana de Administracion y Comercio; Philip Kazon, Sheldon D. Camhy, New York City, of counsel.

Shearman, Sterlin & Wright, New York City, for United Steel Works Corp. and successor companies; Charles C. Parlin, Jr., New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Validation Board for German Dollar Bonds; Louis L. Stanton, Jr., New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for Dillon Read & Co.; Corydon B. Dunham, Jr., New York City, of counsel.

HERLANDS, District Judge.

Three motions before the court are:

(1) the first (Motion No. 128 [60 Civ. 28901]), by Cavac Compania Anonima Venezolana de Administracion y Comercio, petitioner (hereinafter "Cavac"), seeks to compel United Steel Works Corporation (hereinafter "Steel Works") and successor companies; The Board for the Validation of German Bonds in the United States and Douglas Hartman, Dr. Jr. Walter Skaupy (members thereof) and David A. Stretch (chairman there-

of); First National City Bank of New York; Dillon Read & Co., all of whom are referred to as respondents, to proceed to arbitration in regard to the validity of certain German Dollar Bonds;

(2) the second, a companion motion (Motion No. 156 [Civ. 135–305]) by Cavac, as plaintiff, against respondents in 60 Civ. 2890, as defendants, seeks to stay all proceedings in the action theretofore commenced (Civ. 135–305) for the determination of the validity of these same German Dollar Bonds;

(3) the third (Motion No. 144 [Civ. 135–305]), by respondent Steel Works, seeks to compel Cavac to answer certain interrogatories propounded in the action commenced for the determination of the validity of the German Dollar Bonds [Civ. 135–305].

Cavac's motion for compulsory arbitration is made pursuant to the Treaty entered into between the United States and Germany on April 1, 1953 and also pursuant to Title 9 U.S.C.A. § 4.

The Validation Board; Dillon Read & Co.; and the First National City Bank stand mute with respect to the various motions.

Respondent Steel Works, the issuer of the bonds in controversy, opposes the petition to compel arbitration, arguing: (1) that Title 9 U.S.C.A. § 4, applies only to written agreements between parties, whereas here, by way of contrast, there is no such written agreement; and (2) that Cavac has waived any right it may have had to arbitrate (under Article 35 of the Validation Law) because its selection of the alternative remedy of a plenary action in this court constitutes an irrevocable election of a remedy.

The two fundamental questions thus posed are:

Does the court have power to compel respondents to proceed with arbitration in accordance with the provisions of the German-American Treaty?

If petitioner had the right to arbitrate, did it waive or lose that right when it commenced a civil action (Civ. 135–305) in this court?

Cavac, a Venezuelan corporation, is the owner of $97,000. face value United Steel Works Corporation mortgage gold bonds. By decision dated April 7, 1958, the Validation Board denied validation to Cavac's bonds.

On July 14, 1958, Cavac instituted a civil action in this court to review the Board's action. On that very same day, however, Cavac decided that it would prefer arbitration to court action; and, accordingly, it requested the United States Marshal not to serve the summons and complaint. The summons and complaint were never served.

Counsel for Steel Works and the Validation Board were notified of Cavac's intention not to pursue litigation but, rather, to seek a review through arbitration.

On July 17, 1958, counsel for Steel Works appeared in the action and served and filed an answer.

Despite a timely request, the Validation Board refused to proceed with arbitration unless Steel Works' consent to arbitrate was obtained.

The law for the Validation of German Foreign Currency Bonds was enacted by the German Government on August 25, 1952.[1] It established the criteria of validity of such German bonds and the procedure for obtaining validation. The law was supplemented by the First Implementing Ordinance of February 21, 1953; the Agreement on Validation Procedures of February 27, 1953; and the Second Implementing Ordinance of March 13, 1953. On April 1, 1953, the governments of the United States and Germany signed a treaty which confirmed the above-described laws, ordinances and agreements and had the effect of incorporating them by reference.

Article 29 of the 1952 Validation Law provides that the only legal remedies available to a person allegedly aggrieved by an adverse decision of the Validation Board (i. e., denying validation of his bonds) are those set forth in Articles 30 to 35. Furthermore, as that statute (Article 29) declares, if more than one remedy is available, the allegedly aggrieved person has an election of one of the remedies. Arbitration is one of the remedies provided by Article 35 for a review of the Board's denial of validation.

Article 6 of the Second Implementing Ordinance of March 13, 1953, amplifies the arbitration provision set forth in Article 35 of the 1952 Validation Law. The amplification is that the application for review shall be filed with the Validation Board; and that then "the Validation Board shall transmit the application to the Arbitration Board, together with the proofs of service, any statements received by it, any statement it desires to make in respect of its own position and the file of the Validation Board concerning the bonds involved."

As already indicated, Cavac applied to the Validation Board for arbitration and the Board refused, solely on the ground that Steel Works was unwilling to proceed with arbitration.

### I.

Does the court have the power to compel arbitration in the circumstances of this case? The court concludes it does possess that power, for the reasons now to be discussed.

■ Contrary to Cavac's assertion, Title 9 U.S.C.A. § 4 does not authorize this court to direct arbitration on the basis of the facts at bar. The Federal Arbitration Act (Title 9 United States Code Annotated) deals with written agreements to arbitrate. The controversy before the court is not between parties to a written agreement to arbitrate. The litigants at bar are not contracting parties. The only "contract" involved in this case is the April 1, 1953 treaty between the governments of the United States and Germany.

However, the circumstance that the Federal Arbitration Act (Title 9 U.S.

---

1. The Treaty of April 1, 1953 and the related precedent and subsequent laws were considered in Abrey v. Reusch, D.C.S.D. N.Y.1957, 153 F.Supp. 337, petition for writ of mandamus denied (2d Cir. 1957).

C.A. § 4) does not serve to confer the power to compel arbitration on the record herein, does not necessarily require the conclusion that this court lacks the power.

The Federal Arbitration Act is not the sole and exclusive source of this court's authority to compel arbitration. In this case, the court derives its authority to order arbitration from the April 1, 1953 treaty.

■ A treaty, no less than a statute, may confer judicial power.

The United States Arbitration Act of 1925 (43 Stat. 883 [1925], 9 U.S.C. section 2 [1940], the predecessor statute of present Title 9) was enacted in order to overcome the commercial inconvenience occasioned by the refusal of the federal courts to give effective common-law or equitable relief for breach of agreements to arbitrate. This refusal to grant enforcement of arbitration agreements was not the concommittant of any inherent lack of power. The judicial determination against the enforcement of agreements to arbitrate was the practical expression of two legal theories; the theory that an agreement to arbitrate was revocable; and, secondly, the theory that an agreement to arbitrate contravened public policy because it attempted to oust the court of jurisdiction.

The roots of the first of these theories can be traced to Coke's dictum in Vynior's Case, 8 Co.Rep. 81b, 82a, 77 Eng. Rep. 597, 599–600 (K.B. 1609):

"* * * if I submit myself to an arbitrament; yet I may revoke it, for my act or my words, cannot alter the judgment of the law to make *that* irrevocable, which is of its own nature revocable." (Italics in original.)

See Comment, Jurisdiction Of The Federal Courts Under The United States Arbitration Act, 27 Texas L.Rev. 218 (1948); Note, Effect of the United States Arbitration Act, 25 Georgetown L.J. 443 (1937).

These judicial theories motivated the federal courts to withhold enforcement of a contract to arbitrate. By legislative fiat, the United States Arbitration Act of 1925 repudiated the older theories and substituted a policy and a procedure of enforcement.

■ In the present case, the court's power to direct specific enforcement of Cavac's right to arbitration flows from a source completely independent of the federal arbitration statute. That judicial power is derived from the executive and legislative fiat embodied in the Treaty of April 1, 1953. "* * * all Treaties made, * * *, under the Authority of the United States" are part of "the supreme Law of the Land" and, therefore, bind the courts. United States Constitution, Article VI, clause 2; Doe ex dem. Clark v. Braden, 1853, 16 How. 635, 57 U.S. 635, 14 L.Ed. 1090; American Trust Company v. Smyth, 9 Cir., 1957, 247 F.2d 149. Consequently, the Treaty grants Cavac a right to arbitration which this court must and will enforce.

## II.

Did Cavac waive its right to arbitrate? In the court's opinion, there has been no waiver.

After the Validation Board denied validation, Cavac had the choice of seeking review either by a plenary action in the court or by an arbitration proceeding. The specific problem is whether Cavac's acts constituted a binding and irrevocable election of the remedy of judicial review, foreclosing it from changing its mind the same day and proceeding by arbitration.

The acts of Cavac, which Steel Works argues constitute a binding and irrevocable election, are:

1. The commencement of an action in this court by the filing of a complaint on July 14, 1958.[2]

2. As noted, supra, pursuant to Cavac's request, the summons and complaint were never served on the defendants by the Marshal.

2. Admission of service of an answer, by Cavac's attorneys, after Cavac's demand for arbitration was made.[3]

3. An appearance in court in which Cavac's counsel asked for a 180-day extension of time in which to file a notice of readiness in the court action.

4. Up to the present time, no steps have been taken to discontinue the court action.[4]

■ In the course of litigation, there comes a time when it would be manifestly unfair to permit one side to resort to arbitration over the protest of the other. As a general rule, the courts have held that this point of no return is reached when the defendant files its answer. The rationale of the general rule is that the filing of the answer marks a joinder of the defendant with the plaintiff in foregoing or rejecting arbitration.

In an attempt to bring itself within the general rule, Steel Works invokes certain statements made in the following four cases: The Belize, D.C.S.D.N.Y.1938, 25 F.Supp. 663; Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 7 Cir., 1942, 128 F.2d 411; Almacenes Fernandez, S. A. v. Golodetz, 2 Cir., 1945, 148 F.2d 625, 161 A.L.R. 1420, and Farr & Co. v. Cia. Intercontinental De Navegacion, 2 Cir., 1957, 243 F.2d 342.

In The Belize, supra, the motion to compel arbitration was made by libelant after the answer had been filed. That was the first time libelant had indicated that it did not wish to continue the action. At the time of filing the answer, the respondent was in effect joining with libelant in rejecting arbitration; and it was this conception of joint action that induced the court to view the election to litigate as binding.

In Galion Iron Works, supra, the plaintiff sought arbitration at the conclusion of the entire civil action. See 128 F.2d at page 414.

In Almacenes Fernandez, supra, the defendant's answer asserted defendant's right to have the action stayed and to compel arbitration. Defendant did not actually move for an order to stay the action and to compel arbitration until six months later. Yet the court found that the defendant's actions did not constitute a waiver of arbitration.

In Farr & Co., supra, the libel never went beyond the initial stage of filing: no party entered an appearance; and no answer was filed.

The attention of this court has not been called to any holding that the plaintiff had made a binding election to litigate where the circumstances of the case included the filing of an answer *after* defendant had been notified of plaintiff's intention to discontinue the civil action and to seek arbitration.

To return to the facts of this case, Steel Works cannot be said to have joined with Cavac in rejecting arbitration for the simple but critical reason that, at the very time of filing its answer, Steel Works was fully aware of Cavac's expressed intention not to litigate but to seek arbitration. It is not disputed that, on the very day that Cavac filed its complaint (July 14, 1958), it advised Steel Works of its intention not to proceed in court but to arbitrate; and that on the same day (July 14, 1958), the United States Marshal was instructed by Cavac not to make service. The formal demand for arbitration was filed the next day, July 15, 1958.

■ The court does not agree with Steel Works' argument that Cavac's admission of the service of Steel Works' answer and Cavac's request for a 180-day extension constitute a binding election. The filing of a complaint by and of itself did not constitute a waiver of the right to

---

3. Cavac's demand for arbitration was filed on July 15, 1958.

4. Cavac has asked for a stay of the court action. Cavac had notified Steel Works on July 14, 1958 that it did not intend to proceed with the court action but would ask for arbitration.

arbitrate. Richard Nathan Corp. v. Diacon-Zadeh, D.C.S.D.N.Y.1951, 101 F. Supp. 428. Not every additional act in the course of litigation results in a waiver. In Robert Lawrence Company v. Devonshire Fabrics, Inc., 2 Cir., 1959, 271 F.2d 402, the defendant in its answer demanded arbitration pursuant to contract but did not move for a stay of the litigation until nine months later. In the interim, settlement was discussed and the defendant consented to the examination before trial of its president. The court found that these intervening steps with a view toward settlement in no way affected the defendant's rights to arbitration.

Similarly, in the case at bar, Cavac's affidavit (Kazon, August 29, 1960) indicates that the 180-day extension was sought to enable the parties to have a period during which they might be able to overcome their procedural differences.

Steel Works was apprised from the outset of Cavac's intention to arbitrate, and the intervening acts do not affect Cavac's rights. The steps taken by Cavac were not inconsistent with its right to arbitrate.

Accordingly, Cavac's motion for an order directing arbitration is granted.

■ Cavac's motion for an order staying all proceedings in its action pending before this court is granted.

The remedies under Articles 31 to 35 of the 1952 Validation Law are exclusive and not consecutive. If Cavac were to move to dismiss the stayed action, that action would be subject to dismissal.

Steel Works' motion for an order to compel Cavac to answer interrogatories is denied.

Settle orders on notice in accordance with the foregoing opinion and decision. The Validation Board will be permitted to submit proposed orders or to otherwise express its views as to the form of the proposed orders or counter orders.

## Supplemental Opinion

This opinion supplements a statement in the original opinion that the Validation Board's refusal to act on Cavac's demand for arbitration was "solely on the ground that Steel Works was unwilling to proceed with arbitration" (Opinion dated October 26, 1960 and filed October 27, 1960, p. 7).

In fairness to the individual members of the Board and the Board itself, the court will qualify the foregoing statement with the following elaboration of the Board's position and the court's finding in respect thereto.

The Validation Board (and its individual members) took no position with respect to the issues eventually determined by the court. As a quasi-judicial body, the Board acted upon the dual belief (1) that it would be inappropriate for it to prefer any particular review of its decision over any other, and (2) that the authorities under which the Board functions do not give it jurisdiction itself to decide the issues which eventually came before this court.

The Board's consistent position was that it could not properly resolve the legal issues between Cavac and the Steel Works; viz, whether Cavac had proper standing to seek review by arbitration and, if so, whether Cavac had waived that remedy by making an election to litigate. Expressing the Board's policy of cold and strict neutrality, the Board refrained from expressing a view in order to avoid possible prejudice to any party's contentions, pending the resolution of the legal issues either by agreement between the parties or by the court.

In sum, and the court so finds, the Board's refusal to proceed with arbitration was grounded on the Board's belief as to the existence of a controversy which the Board was without jurisdiction to solve and as to which controversy it could properly express no position.