614 F.2d 698
 103 L.R.R.M. (BNA) 2475, 88 Lab.Cas. P 11,833
 REID BURTON CONSTRUCTION, INC., a Colorado Corporation,
Plaintiff-Appellee,
v.
CARPENTERS DISTRICT COUNCIL OF SOUTHERN COLORADO, and Local
No. 1340 of the United Brotherhood of Carpenters &
Joiners of America, AFL-CIO,
Defendants-Appellants.
 No. 77-1458.
 United States Court of Appeals,
Tenth Circuit.
 Argued Nov. 17, 1978.
Decided Jan. 31, 1980.
 
 Robert I. Cohn, Denver, Colo. (Robert G. Good and Martin Semple, of Good & Stettner, Denver, Colo., were on the brief) for plaintiff-appellee.
 John W. McKendree, Denver, Colo. (McKendree & Lubin, Denver, Colo., were on the brief) for defendants-appellants.
 Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This appeal brings before us for the second time a dispute involving alleged breach of the no-strike clause of a collective bargaining agreement, asserted as a § 301 suit under 29 U.S.C. § 185, between plaintiff Reid Burton Construction, Inc. (Burton), and defendants Carpenters District Council of Southern Colorado (District Council) and Local 1340 of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO (Local 1340 or Local).
 
 
 2
 * The relevant facts are as follows. The complaint (II R. 1-6), filed July 13, 1973, and the amended complaint (II R. 73-77)[1] based jurisdiction on Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185,[2] and in paragraph 5 alleged that defendants were parties to the collective bargaining agreement and that the agreement governed the relationship between the parties. Following denial of their motions to dismiss,[3] defendants on November 9, 1973, filed an answer[4] in which they denied the allegations of paragraph 5, stating that District Council was party to an agreement with plaintiff but that Local 1340 was not a party. The answer also asserted the contract's arbitration clause as a bar to plaintiff's action and as the basis of a counterclaim for breach of the agreement and damages.4a
 
 
 3
 Defendants maintained this position throughout pretrial and discovery proceedings. See generally I R. 115-116. On July 18, 1974, they filed a Suggestion to Dismiss, stating that the pleadings and depositions on file showed on their face "that the controversy described therein is one within the exclusive jurisdiction of an arbitrator" under the contract's arbitration clause. In the brief supporting this suggestion defendants conceded that Local 1340 was subject to the agreement's terms and that Local "would be bound by an arbitral award" issued in accordance with them. But defendants made no motion to stay the court proceedings (see Brief of Appellants at 29 n.25), and no motion for an order directing plaintiff to arbitrate.[5] Their apparently changed position was "further obfuscated," the trial judge said (I R. 91); the judge noted that five days later in their amended pretrial statement defendants pleaded that "the Defendant Local 1340 is not a party to the aforementioned collective bargaining agreement with plaintiff." (I R. 91).
 
 
 4
 The case proceeded to trial on October 1, 1974. During trial, defense counsel questioned Mr. Burton to establish the point that he had not sought arbitration under the contract. The court then asked defense counsel if he would agree that he would arbitrate the question of damages and be bound by it, and counsel so agreed. The judge then referred to the loss of time and expense to the parties and loss of the court's time. (IV R. 49-51). Counsel further responded to questions by the court that defendants did demand arbitration, and that arbitration should be ordered under Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. (Id. at 111).
 
 
 5
 Later in the trial in response to further questioning by the court defense counsel admitted that he first requested, by mandatory injunction, an order for plaintiff to arbitrate "when requested to do so today." (IV R. 140). Defense counsel maintained, however, that defendants' position since filing of the answers had been that the appropriate forum was arbitration. (Id. at 142).
 
 
 6
 Because of the time already invested in the case and because of his view that defendants should not be permitted to frustrate the judicial process at that late date, the judge went ahead with the trial. During the trial, evidence was presented on the issues of breach of the no-strike clause, damages, various defenses and the relationship of the union organizations.
 
 
 7
 Subsequently, the trial judge issued the original opinion in which he held, inter alia, that the dispute itself was arbitrable. (III R. 314). In addition, relying on Operating Engineers Local 150 v. Flair Builders, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), he held that the preliminary question whether defendants had not waived their right to arbitration by "evasive and dilatory" brief and pleading tactics in the district court should properly be decided by an arbitrator. (Id.). He ordered a stay of the district court proceedings, then later, upon plaintiff's motion, dismissed the suit altogether so that plaintiff might perfect an appeal. (III R. 315, 320).
 
 
 8
 In the first appeal, see Reid Burton Construction v. Carpenters District Council of Southern Colorado, 10 Cir., 535 F.2d 598, cert. denied, 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 188 (1976), we upheld the trial court's determination that the dispute was properly arbitrable under the terms of the contract, but found that when the actions premising plaintiff's equitable defense to defendants' asserted arbitration right occurred solely before the court, it was improper to have given the arbitrator the equitable preliminary issues to decide. Accordingly, we remanded the case to the district court for determination of whether defendants, by evasive and dilatory pleading practices before that court, were prevented from asserting any right they may have had to arbitration.[6]
 
 
 9
 On remand the district court found that defendants' conduct in court established an equitable defense to defendants' arbitration right and entered judgment for plaintiff for the predetermined[7] $10,801.97 in damages, plus interest and costs. Reiterating his views that he took a "dim view of defendants' whirlygig positions during the course of the litigation" and that "such sophistry as (defendants') does not help a court in its futile efforts to keep up with an overcrowded docket," the district judge found that "advertently or inadvertently the court and plaintiff's counsel were led down a primrose path by a failure on the part of defendants' counsel to communicate to the court and opposing counsel in a timely way the argument of defendants that the dispute was one subject to arbitration." (I R. 86). Having found that "defendants acquiesced in setting the case for trial " and that "their pretrial statement cheerfully estimated the length of trial to be held" (I R. 90), the court noted that even after their suggestion to dismiss "defendants made no offer to obtain nor did they agree to submit to binding arbitration." (I R. 92) (Emphasis added).
 
 
 10
 Though observing that "the unfortunate results may have been largely inadvertent rather than intentional" (I R. 93), the court found that the "impact on the court and on plaintiff were the same no matter what the intent of defense counsel. The pleadings and briefs filed for defendants were evasive and dilatory, and whether they were so because of intent or as a result of negligence, plaintiff and the court were lulled into a belief that defendants wanted the court to try the lawsuit, and that's what the court did." (Id.).
 
 
 11
 Finally, noting that "(t)he unions played games with plaintiff and the court too long to now insist on an injunctive order requiring plaintiff to arbitrate this stale dispute," the court concluded that "the record in this case demonstrates that the conduct of defendants in this case in this court establish the equitable defenses to arbitration mentioned by Chief Judge Lewis." (Id.).
 
 
 12
 This timely appeal follows, and we focus mainly on the findings and the holding against defendants' right to arbitration.
 
 II
 
 13
 In urging reversal of the district court, defendants argue that they did not waive their right to assert the arbitration defense either by not moving for a stay or by participating in the litigation. More specifically, defendants contend that they raised their arbitration defense in a timely and proper fashion and without intentional misrepresentation of Local 1340's contract status; that the initial denial of Local's party status was made in good faith; and that, in any event, Burton has suffered no prejudice from the delay in demanding arbitration. Mere delay, they say, does not constitute waiver, absent such a showing of prejudice; defendants were not obligated to move for a stay; and the mere filing of a counterclaim does not waive the defense.
 
 
 14
 Defendants further contend that since alternative pleading is proper, a party need not rely exclusively upon the arbitration provisions of the contract, but may also seek damages for breach in the same action. It is not the inconsistency or apparent inconsistency of these pleadings, but rather any prejudice flowing therefrom, which determines the waiver issue. Thus "the counterclaim, rather than abandoning the arbitration defense, underscored its presence as an important element in the action."
 
 
 15
 We cannot agree that these points call for reversal of the trial court's findings. Generally, the parties to a contract can agree to settle disputes arising thereunder by arbitration. Indeed, the federal policy is to promote industrial stabilization through the collective bargaining agreement, and a major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the agreement. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409. However, the right to arbitration, like any other contract right, can be waived. Cornell & Company v. Barber & Ross Company, 123 U.S.App.D.C. 378, 360 F.2d 512, 513 (D.C. Cir.), aff'g. 242 F.Supp. 825 (D.D.C.). There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case and usually calls for a finding by the trier of the facts. Burton-Dixie Corp. v. Timothy McCarthy Const. Co., 436 F.2d 405, 408 (5th Cir.).
 
 
 16
 In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, Cornell & Company v. Barber & Ross Company, supra, 360 F.2d at 513; whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, Cornell & Company, 242 F.Supp. at 826 (D.D.C.), aff'd, 360 F.2d 512; whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand, General Guaranty Ins. Co. v. New Orleans General Agency, Inc., 427 F.2d 924, 928 n.4 (5th Cir.); Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402, 413 (2d Cir.), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37; American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115, 121 (6th Cir.), cert. denied, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074; E. T. Simonds Const. Co. v. Local 1330 of Int. Hod Carriers, etc., 315 F.2d 291 (7th Cir.); Radiator Specialty Co. v. Cannon Mills, 97 F.2d 318 (4th Cir.).
 
 
 17
 Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, American Locomotive Co. v. Chemical Research Corp., supra, 171 F.2d at 121; Radiator Specialty Co. v. Cannon Mills, supra, 97 F.2d at 319; Hilti, Inc. v. Oldach, 392 F.2d 368, 370-71, 372 n.9 (1st Cir.); whether important intervening steps (e. g., taking advantage of judicial discovery procedures not available in arbitration, see Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n.7 (2d Cir.)) had taken place, Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 989 (2d Cir.); and whether the other party was affected, misled, or prejudiced by the delay, Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d at 989; Local 198, United Rubber, C. L. & P. Wkrs. v. Interco, Inc., 415 F.2d 1208, 1211-12 (8th Cir.); Carcich v. Rederi A/B Nordie, supra, 389 F.2d at 696.
 
 
 18
 In Burton-Dixie, supra, the Fifth Circuit confronted the waiver issue in a context substantially similar to the present one. There defendant in its answer did not ask the court to stay proceedings pending arbitration, but rather denied liability, set up as an affirmative defense plaintiff's failure to arbitrate, impleaded two third-party defendants, and proceeded to litigate the substantive dispute. The court concluded that the factfinder (there a jury) could reasonably find that defendant waived its right to insist on arbitration. Id., 436 F.2d at 409; see also American Locomotive, supra, at 115.
 
 
 19
 Viewed against the above principles and decisions, we cannot say that the finding of waiver by defendants District Council and Local 1340 was clearly erroneous. We note the initial and consistent denial for one year of Local's status as a party; the ambiguous or confusing ultimate stance on this point; defendants' participation in numerous hearings, pretrial conferences, motions and other pleadings, and the deposing of witnesses; and their assertion of the arbitration clause merely as a defense in bar and a counterclaim, without insisting upon or demanding immediately, as was their duty, see Radiator Specialty, 97 F.2d at 319, enforcement of that provision.
 
 
 20
 Among other things, the defendants-appellants argue that there was no prejudice to Burton resulting from their actions in court. While it is true that the trial court made no specific finding of prejudice, the sum and substance of those findings as a whole is one of prejudice and detriment to Burton. Admittedly it was not until the day of trial when mandatory injunctive relief was requested by defendants, which clearly signaled their position that they desired the decision of an arbitrator instead of the court. The preparations until that time for trial in the court do, in our opinion, amount to sufficient prejudice that it is inequitable for a party at that point to shunt the controversy over to the arbitration procedures. See American Locomotive Co. v. Chemical Research Corp., supra, 171 F.2d at 121.[8]
 
 
 21
 The findings of the trial court on the defendants' conduct must be accepted unless they are clearly erroneous. See Sheet Metal Wkrs. Int. Ass'n v. Los Alamos Const., 550 F.2d 1258, 1265 (10th Cir.). We conclude that the court's findings here were not clearly erroneous and that its holding that defendants' conduct in the court proceedings prevented assertion of their arbitration right was not in error. Accordingly, the judgment is
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The complaint and the amended complaint were identical, except that the latter deleted plaintiff's request for injunctive relief
 
 
 [2]
 Section 185(a) of Title 29, U.S.C. provides:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [3]
 These motions were filed in response to plaintiff's complaint and amended complaint and were denied on October 26, 1973. (I R. 115). On November 23, 1973, another defendant, Colorado Building and Construction Trades Council (Trades Council), was dismissed from the suit. (I R. 84, 115; II R. 138-39; III R. 307)
 
 
 [4]
 Though defendants later amended their answer, the changes did not relate to the issue presented in this appeal
 4a Defendants in their answer also pleaded an Eighth Affirmative Defense (II R. 126) in which they stated that:
 The defendants . . . , without waiving their contention that the interpretation and application of the provisions of the aforementioned collective bargaining agreement is within the sole and exclusive province of the disputes resolution machinery agreed to therein, assert that they have neither waived their right, nor the right of the employees they represent, to honor a picket line established by another labor organization.
 
 
 [5]
 With respect to whether plaintiff Burton was misled into thinking the defendants would not ask for an order for arbitration, a point discussed further below, we note that in a written reply on August 2, 1974, to the defendants' Suggestion to Dismiss, plaintiff Burton did criticize the defendants' temerity at that late hour to suggest that "the court cannot further proceed in this action and must order arbitration." (III R. 210). (Emphasis added). However, the Suggestion itself and the exchanges between the parties dealt mainly with the request to dismiss the action and the defendants' Suggestion and brief do not actually seek an order for arbitration
 
 
 [6]
 In that first appeal we stated (535 F.2d at 604):
 It is entirely appropriate in some instances for a district court to retain section 301 jurisdiction of an arbitrable dispute where, because of conduct before the court, it may be deemed that a party is prevented on the basis of some equitable principle from asserting a right to arbitration. Whether the instant case is one such instance has not been decided. Therefore, we remand this case for such a determination. If the district court finds that there has been no estoppel or waiver because of the unions' conduct in pleading, then it is proper to order arbitration of the underlying dispute the alleged violation of the no-strike clause. If on the other hand it is determined that the unions have waived their right to arbitration, or in some other way should be prevented from asserting this right, because of conduct which falls within the control of the court, then the district court can properly proceed to the merits of the underlying dispute.
 In sum we conclude that the enumerated equitable defenses discussed are, in general, mandated by Flair Builders to the arbitrator for determination of the continued vitality of the contractual arbitration process. However, if such defenses arise solely during the course of the judicial process the arbitrator is not the one to determine whether the judicial process has been abused by either party or at all or whether an equitable defense to the main dispute has been established during the course of the judicial trial by in-trial conduct.
 
 
 [7]
 The trial judge had already made findings on damages before the first appeal. (See III R. 312-13). These findings are not challenged in the second appeal
 
 
 [8]
 In American Locomotive, supra, 171 F.2d 115, the defendants filed an answer and counterclaim denying the material allegations of the complaint; set up six special defenses, one of which pleaded the arbitration clause as a bar to plaintiff's action; declined to move for a stay at the outset; and participated in extensive proceedings in the case, including pleadings, motions, agreed orders, and expensive discovery procedures, before insisting on arbitration
 We have noted Controlled Sanitation Corp. v. Machinists District 128, 524 F.2d 1324 (3d Cir.), cert. denied, 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319, but doubt the persuasiveness of the majority position there. In any event the case seems distinguishable. The majority opinion there noted specifically, id. at 1326 n.3, that while the unions had taken a position that there was no collective bargaining agreement, they clearly reserved the right that the dispute should be submitted to arbitration, should the court find otherwise. That is not the case here. While the defendants were asserting their changing positions concerning the agreement they did not, until the day of trial, assert as either a primary or alternative position a request for a stay or for an order for arbitration.