**Frank McDONNELL, Plaintiff,**

v.

**DEAN WITTER REYNOLDS, INC., and James Reid, Defendants.**

**Civ. A. No. N–82–179 (RCZ).**

United States District Court, D. Connecticut.

July 8, 1985.

Dennis N. Garvey, Barbara Cox, Garvey & Walsh, New Haven, Conn., for plaintiff.

Sharon S. Tisher, Kim M. Cooke, Day, Berry & Howard, Hartford, Conn., for defendants.

## RULING ON MOTIONS TO COMPEL ARBITRATION, TO STAY PROCEEDINGS, AND TO AMEND ANSWER

ZAMPANO, Senior District Judge.

Plaintiff Frank McDonnell seeks damages against Dean Witter Reynolds, Inc. ("Dean Witter") and James Reid, formerly a Dean Witter employee, for the alleged mismanagement of his securities account. Plaintiff asserts causes of action under the Securities Act of 1933, 15 U.S.C. § 77q(a), the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(c) and 78t(a), the Connecticut Uniform Securities Act, Conn.Gen. Stat. §§ 36-470 to 36-502, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. §§ 42-110a to 42-110q, the rules of the New York Stock Exchange, as well as various causes of action arising under the common law.

Pending are Dean Witter's motions to compel arbitration of the dispute and to stay these proceedings, and both defendants' motion to amend their answer to allege arbitration as special defense.[1]

### I.

The complaint alleges that plaintiff opened a securities account with Dean Witter in November 1980 with a $129,000 investment portfolio that plaintiff's mother left to him when she died. Plaintiff assertedly instructed Dean Witter and Reid, the account executive, merely to transfer the portfolio into plaintiff's name. Instead, plaintiff contends defendants not only transferred the stock into plaintiff's name, but they also sold most of the securities "without advising or consulting" him. The proceeds from the sales were, according to the plaintiff, used to buy "high risk and speculative over-the-counter securities" for plaintiff's account. The value of plaintiff's account fell to less than $19,755 by August 1981.

Plaintiff does not dispute that when he opened his account in November 1980 he signed a standard "Customer's Agreement." Paragraph 16 of that agreement states that "[a]ny controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration...."[2]

Plaintiff filed this action on April 14, 1982, and defendants filed a motion to dismiss on May 14, 1982. The motion was based on several asserted pleading errors and ambiguities; the motion did not raise the arbitration defense. After several extensions of time requested by both sides, plaintiff filed an amended complaint. On January 11, 1983, Magistrate Thomas P. Smith denied the motion because most of defendants' arguments in favor of their motion were moot. Further, on that date Magistrate Smith granted plaintiff leave to file a second amended complaint, which added a cause of action arising under CUTPA.

On February 2, 1983, defendants filed a demand for jury trial and an answer with a series of special defenses. Inexplicably, they again failed to raise the defense of arbitration.

---

1. Defendant Reid joined in Dean Witter's motion to compel arbitration and to stay these proceedings.

2. Paragraph 16 provides in full as follows:

 16. Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

Thereafter for almost two years the parties engaged in lengthy discovery proceedings including interrogatories, depositions and production of documents. On several occasions, this Court's intervention was necessary to resolve disputes which arose during the discovery process.

Finally, in an effort to dispose of the case, the Court ordered the parties to try this action in January 1985. However, the matter was continued to the February 1985 calendar call to allow counsel time to complete final discovery. In February, the parties again requested and received permission to take an additional deposition. During the next month, the Court was also required to rule on several motions to compel.

In the meantime, the Court ordered that the case proceed to trial on April 4, 1985. Three days before jury selection, Dean Witter for the first time sought, under 9 U.S.C. § 4, to compel arbitration of plaintiff's common law and state statutory law claims pursuant to paragraph 16 of the Customer's Agreement. After plaintiff objected to the motion in a memorandum filed on April 4, Dean Witter amended its motion to request arbitration of plaintiff's federal law claims as well. Again, due to these eleventh-hour maneuvers, the trial date was continued.

In a letter from chambers dated April 16, 1985, the Court set oral argument on Dean Witter's motion for May 2, 1985. Further, the Court called to counsel's attention the recent decision of the Court of Appeals in *Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457 (2 Cir.1985).

On April 26, 1985, defendants moved for permission to file an amendment to their February 2, 1984 answer. Specifically, they seek to set forth as a "Sixth Affirmative Defense" that "[a]t or about the time that the plaintiff opened his securities account with the defendant Dean Witter

Reynolds, Inc. [ ], the plaintiff and Dean Witter entered into a Customer's Agreement which stipulated that any controversy between them arising out of or relating to the Customer's Agreement or the breach thereof shall be resolved by arbitration. Therefore, the plaintiff is precluded from pursuing his Complaint before this Court."[3]

Counsel filed memoranda discussing *Sweater Bee* on April 30, and May 1, and oral argument was held on May 2. Following questioning by the Court as to whether Dean Witter merely sought to compel arbitration pursuant to 9 U.S.C. § 4, as set forth in the April 1, 1985 motion, or whether it also sought a stay of the instant action pursuant to 9 U.S.C. § 3, Dean Witter filed a "Clarified Motion to Compel Arbitration and for a Stay of Proceedings." Supplemental memoranda addressing issues raised at oral argument have been submitted by both parties. The motions to compel arbitration and to stay have been thoroughly briefed, and all motions are ripe for decision.

## II.

Although the parties have extensively briefed the issues regarding the Arbitration Act, the important question of whether the motion for leave to amend the answer should be granted has been virtually ignored. Defendants' motion was unaccompanied by a memorandum of law, and plaintiff has submitted nothing in direct response to the motion. The issue is critical because, under Fed.R.Civ.P. 8(c), the affirmative defense of arbitration must appear in the answer, and "a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday & Company, Inc. v. Curtis*, 763 F.2d 495, 503 (2 Cir.1985) (citing *Satchell v. Dilworth*, 745 F.2d 781, 784 (2 Cir. 1984)). Thus, absent a ruling granting the motion for leave to amend, Fed.R.Civ.P. 15(a), the motions to compel arbitration and to stay cannot be granted; if the defense is

---

**3.** Defendants also seek to assert as a "Seventh Affirmative Defense" the failure of plaintiff's cause of action for violation of the Rules of the New York Stock Exchange to state a claim on which relief may be granted. Plaintiff has not

opposed that aspect of the motion. Accordingly, the motion for leave to amend should be granted to permit filing the proposed Seventh Affirmative Defense.

not set forth in the answer, Dean Witter "already waived the right to litigate the issue." *Doubleday*, at 503.

■ Under Rule 15(a), "leave [to amend] shall be freely given when justice so requires," and should be granted absent "some justification for refusal." *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, the "proviso 'when justice so requires' necessarily implies justice to both parties." *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211, 215 (S.D. N.Y.1978). *See also* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1485, at 420–21 (1971).

■ Three of the most important factors in determining whether to grant a motion to amend are (1) injustice to the party opposing the motion if the motion is granted; (2) injustice to the moving party if leave to amend is denied; and (3) delay, as well as the reason why the moving party did not include in its original pleading the material sought to be included in the amended pleading. *Foman*, 371 U.S. at 182, 83 S.Ct. at 227; 6 C. Wright & A. Miller, *supra*, § 1487, at 429. The factors of delay and injustice or prejudice to the opposing party if the motion is granted often are intertwined, as Judge Kaufman noted in *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2 Cir.1968): "it is manifest that risk of substantial prejudice increases in proportion to the length of the defendant's delay in seeking the amendment." *Id.* at 1155.[4]

■ Applying these factors to the facts of the instant case, leave to amend should not be allowed. First, prejudice and injustice to plaintiff are apparent if the motion is granted. He has engaged in comprehensive and expensive discovery, motion practice, and other proceedings preparatory to a trial in this forum.[5] Second, it is not unjust or prejudicial to defendants for their motion to be denied. They will have a forum in this Court to raise their defenses to plaintiff's claims. Defendants have already expended substantial sums for discovery in this forum, so that the only additional expense to be incurred is the expense of trial. Finally, although "delay alone is not a sufficient reason for denying leave," 6 C. Wright & A. Miller, *supra*, § 1488, at 438; *see Hanson v. Hunt Oil Co.*, 398 F.2d 578, 582 (8 Cir.1968), in this case the delay is overwhelming and undue. Defendants have not proffered a persuasive reason for the blatantly tardy filing of the motion for leave to amend.[6] The motion to amend was filed after this case was assigned for trial three times, and only three days before a jury was to be selected in this three-year-old case.

For these reasons, the Court finds that under the facts of this case it would be unfair and unjust to grant defendants' motion for leave to amend.

### III.

Even if the motion for leave to amend was granted, however, the Court would not

---

**4.** *Strauss* involved defense counsel's belated attempt to raise the statute of limitations as a defense. If the defense had been raised earlier, the court noted, plaintiff might have chosen to drop the action and refile it in a forum with a longer statute of limitations. *Id.* at 1157–58. Accordingly, the court found that plaintiff was substantially prejudiced by the trial court's granting defendant leave to file an amended answer, and reversed its ruling as an abuse of discretion.

**5.** Some discovery taken in this action could, of course, be used in a subsequent arbitration proceeding. However, given the relatively limited scope of arbitration proceedings, nearly all of the funds spent in discovery would be wasted if Dean Witter's motions were granted.

**6.** Dean Witter did offer a reason for its delay in making the motion to compel arbitration and to stay this action, *see infra* pp. 157–158, but it has given no explanation of its failure to include the arbitration defense in an earlier answer. Clearly the defense was not raised at this late date because of information uncovered during the discovery process, which distinguishes this case from *Tokyo Boeki (USA), Inc. v. SS Navarino*, 324 F.Supp. 361, 367 (S.D.N.Y.1971) (motion for leave to amend to assert affirmative defense of arbitration granted when existence of agreement to arbitrate was unknown to defendant until after deposition of officer of plaintiff).

grant Dean Witter's motions to compel arbitration and for a stay.

### A

The parties' positions on the arbitration issue may be summarized briefly as follows. Dean Witter claims that under the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court is required to grant its motions to compel and for a stay, despite the late date at which they were filed. Plaintiff, on the other hand, contends that Dean Witter has waived any right to arbitrate that it may have had, and, in any event, only the state law claims are arbitrable. Further, plaintiff asserts that the agreement to arbitrate should not be enforced because the Customer's Agreement is an adhesion contract. Because the Court agrees with plaintiff on the waiver question, the latter two issues need not be considered.

 The Arbitration Act, enacted in 1925, reflected Congressional concern with judicial hostility to arbitration agreements. "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered." *Byrd*, 105 S.Ct. at 1242. However, the right to arbitration, like any other contract right, may be waived. *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270, 272–73 (7 Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9 Cir.1978); *Demsey & Associates v. S.S. Sea Star*, 461 F.2d 1009, 1017–18 (2 Cir.1972); *cf. Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado*, 614 F.2d 698, 702 (10 Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980). Nevertheless, "[i]n view of the 'overriding federal policy favoring arbitration,' waiver 'is not to be highly inferred and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party cannot carry the day.'" *Sweater Bee*, 754 F.2d at 461 (quoting *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2 Cir.

1968) ). *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (arbitration strongly favored as matter of federal law).

### B

 As a threshold matter, Dean Witter contends that the question of waiver is one for the arbitrator, citing *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 571 (2 Cir.1968). In *Trafalgar Shipping*, the Second Circuit held that "all questions of delay *which relate to issues which the parties have agreed to submit to arbitration* [must] be resolved by the arbitrators, not the court." *Id.* at 571 (emphasis added). Here, however, the question of delay is not one that the parties agreed to arbitrate because it is unrelated to the merits of the underlying dispute. Rather, the issue of delay is relevant solely to its effect upon the resolution of the motion to compel arbitration, and, as noted in *Trafalgar Shipping*, it is for the Court to consider "those questions of delay which relate to and affect issues which it is called upon to decide in connection with the motion under 9 U.S.C. § 4." *Id.* at 572. *Cf. Sweater Bee*, 754 F.2d at 461–62.

### C

As to the waiver issue itself, the first matter to be resolved is whether the Supreme Court in *Byrd*, 105 S.Ct. at 1238, impliedly rejected the application of the waiver doctrine as a defense to a motion to compel arbitration, as Dean Witter argues. It is true that the broad language in *Byrd*, taken out of context, lends support to the argument that the Supreme Court vitiated the waiver defense in arbitration cases: "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Id.* 105 S.Ct. at 1241.

Despite this language, the Court is satisfied that the defense of waiver is still a viable one in arbitration cases. In *Byrd*, as set forth *infra*, the central issue addressed was the "doctrine of intertwining." Unlike the situation in the instant case, the de-

fendant there moved promptly to compel arbitration after the complaint was filed. Thus, the question of waiver neither was presented to the Supreme Court nor even mentioned in the opinion.

Moreover, it is extremely unlikely that the reasoning in *Byrd* was intended to abolish *sub silentio* the well-settled principles of waiver which have been consistently applied by federal courts for over forty years. *See, e.g., Demsey & Associates,* 461 F.2d at 1017–18 (motion to compel arbitration denied when movant's delay prejudiced opponent); *Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd.,* 204 F.2d 366, 369–70 (2 Cir.) ("[f]or as a court, when asked to enter an order, under the federal Arbitration Act, requiring a party to arbitrate as he promised, sits 'in equity,' passing on a prayer for specific performance, it must take into account equity considerations"), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953); *Kulukundis Shipping Co., S/A v. Amtorg Trading Corp.,* 126 F.2d 978, 986 (2 Cir.1942) (specific performance of arbitration agreements subject to equitable defenses).

Significant also is that the Supreme Court in *Moses M. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941, noted the availability of waiver as a "defense to arbitrability." There is no express indication that the Court's recognition of the waiver defense in *Moses M. Cone Memorial Hospital* was inadvertent or was intended to be overruled by *Byrd.* Accordingly, the Court must reject the defendants' argument that *Byrd* proscribes a consideration of the waiver doctrine in cases as the one *sub judice.*

On the merits of the waiver question, Dean Witter claims that it did not move to compel arbitration earlier because of the unsettled state of the law regarding the intertwining doctrine. The complaint in this action presents arbitrable state law claims, as well as what Dean Witter apparently believed when this motion was first filed were non-arbitrable federal law claims. Courts in the Fifth, Ninth, and Eleventh Circuits applied the intertwining doctrine, to hold that "when there are arbitrable and nonarbitrable claims arising out of the same transaction, the district court should have discretion to evaluate the degree to which the claims are intertwined. If the district court determines that they are so intertwined that the purposes of the Arbitration Act and the protective intent of the federal securitiele laws would be frustrated by separating the claims, then it should refuse to separate them." *Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552, 554 (9 Cir.1984), *rev'd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Three circuits, the Sixth, Seventh, and Eighth, have rejected the intertwining doctrine. *See, e.g., Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 646 (7 Cir.1981).

On appeal in *Byrd,* the Supreme Court reversed the Ninth Circuit's ruling, 105 S.Ct. at 1238, and in so doing rejected the doctrine of intertwining. The Court held that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the highly inefficient maintenance of separate proceedings in different forums." *Id.* 105 S.Ct. at 1241. Because of its "belief" that "arbitration would be precluded in this action by reason of the doctrine of intertwining," Dean Witter argues that it would have been futile for it to file the instant motions until the Court in *Byrd* resolved the issue.

Dean Witter's argument to explain its delay of almost three years is unpersuasive. The Second Circuit has not, to this Court's knowledge, ever applied the intertwining doctrine. Furthermore, Dean Witter could have moved to compel arbitration of arbitrable claims and to stay the proceedings on non-arbitrable claims based on the analysis set forth in *N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp.,* 532 F.2d 874 (2 Cir.1976). *See also NPS Communications, Inc. v. The Continental Group, Inc.,* 760 F.2d 463, 464–465 (2 Cir.1985) (affirming district court application of *A.O. Smith* to motion

to compel arbitration in case involving arbitrable and non-arbitrable claims).

■ However, the Court recognizes that Dean Witter's lengthy and inexcusable delay in itself does not constitute a waiver of whatever rights to arbitrate it may have had. *Carcich*, 389 F.2d at 696; *see also Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291, 293 (2 Cir.1965). Rather, only when delay prejudices the opposing party will delay be sufficient to constitute a waiver. *Sweater Bee*, 754 F.2d at 463. "Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration." *Carcich*, 389 F.2d at 696 n. 7.

■ A party may also waive arbitration by "the litigation of substantial issues going to the merits." *Sweater Bee*, 754 F.2d at 461. *See also Reid Burton Construction, Inc.*, 614 F.2d at 702 (waiver may be found when "litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff").

Further, notice to the party opposing arbitration is an important factor in the Second Circuit cases in which a motion to compel arbitration is granted. *See, e.g., Sweater Bee*, 754 F.2d at 461–62 (arbitration raised in answer); *Carcich*, 389 F.2d at 694 (answer to cross-complaint alleged that dispute should be submitted to arbitration); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412–13 (2 Cir. 1959) (no waiver where answer contained arbitration defense although motion for stay was filed nine months later), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). *See also Chatham Shipping Co.*, 352 F.2d at 293 ("the earliest point at which such preclusion may be found is when the other party files an answer on the merits").

■ Applying these principles to the facts of this case, it is clear that Dean Witter has waived its right to arbitrate. Plaintiff, without notice that Dean Witter might move to compel arbitration, embarked on lengthy and expensive discovery and will be greatly prejudiced and inconvenienced by the delay. For its part, Dean Witter has engaged in robust pretrial litigation over a period of nearly three years, and at no point raised the arbitration defense in an answer or other filing. In addition to moving for several extensions and attending chambers conferences, Dean Witter has engaged in discovery that would not have been available to it if it had gone to arbitration. The instant motion was filed only after this case was assigned and reassigned for trial. Under these circumstances not only has Dean Witter's delay prejudiced plaintiff, but Dean Witter also has litigated "substantial issues going to the merits." *Sweater Bee*, 754 F.2d at 461. Accordingly, under either of the standards set forth in *Sweater Bee* and *Carcich*, Dean Witter has waived its right to compel arbitration of this dispute.

As was noted in *Cavac Compania Anonima Venezolana de Administracion y Comercio v. Board for Validation of German Bonds*, 189 F.Supp. 205 (S.D.N.Y. 1960), "in the course of litigation, there comes a time when it would be manifestly unfair to permit one side to resort to arbitration over the protest of the other." *Id.* at 209. That point has been reached here.

### IV.

For the reasons set forth above, Dean Witter's motion for leave to file an amended answer to raise the arbitration defense is denied. In all other respects, the motion for leave to file an amended answer is granted, absent objection. However, even if the motion to amend to raise the arbitration defense should be granted, the Court concludes that plaintiff has met its heavy burden of demonstrating that Dean Witter has waived whatever arbitration rights it may once have had. Accordingly, Dean Witter's motions for a stay of these proceedings and to compel arbitration are denied.

SO ORDERED.