

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2005

# Quality Improvement v. Williams

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2391

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Quality Improvement v. Williams" (2005). *2005 Decisions*. Paper 1249.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1249

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-2391

_____

QUALITY IMPROVEMENT CONSULTANTS, INC.,
a Nevada corporation

v.

RALPH WILLIAMS, individually d/b/a RALPH WILLIAMS CONSULTING;
COOLIEMON, LLC, a Pennsylvania corporation; ALAN S. KOCH, individually a/b/a
ALAN KOCH CONSULTING d/b/a ASKPROCESS; VERNELL CONSTRUCTION,
INC.,

Ralph Williams;
Alan S. Koch,
                                   Appellants

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 03-cv-00393)
District Judge: The Honorable Thomas M. Hardiman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 3, 2005

BEFORE: McKEE, VAN ANTWERPEN, and WEIS, Circuit Judges,

(Filed:   May 4, 2005)

_____

OPINION

_____

VAN ANTWERPEN, Circuit Judge,

Appellants Ralph Williams and Alan S. Koch appeal from an April 19, 2004, order of the District Court (Hardiman, J.) granting the motion of Appellee Quality Improvement Consultants ("QIC") to dismiss its own complaint pursuant to Fed. R. Civ. P. 41(a)(2). The District Court held that QIC's breach of contract action for equitable relief did not constitute a waiver of its contractual right to arbitrate its separate claim for damages under Minnesota law. Appellants assert on appeal that QIC did waive its right to arbitrate by including a claim for damages, in addition to the claim for equitable relief, in its federal complaint. Because the complaint is ambiguous with respect to whether or not QIC sought damages for its breach of contract claims, we will affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Since we write only for the parties, we will set forth only the essential facts. Williams and Koch each entered into a separate Personal Service Agreement ("PSA") to provide consulting services to QIC. In June 2002, Williams filed an action in the Court of Common Pleas of Butler County, Pennsylvania seeking a declaration that the terms of his PSA with QIC, particularly its non-compete provision, were unenforceable. Williams also sought payment of outstanding invoices. This state court suit was later amended to include a claim by Koch seeking declaratory and injunctive relief against the enforcement of the non-compete clause in his PSA with QIC.

Both PSAs contained the following arbitration clause: "All disputes arising out of this contract, or with respect to its effectiveness, shall . . . be decided by arbitration

2

barring ordinary legal proceedings." After QIC filed a petition in the Butler County Court of Common Pleas to compel arbitration pursuant to this clause, the Common Pleas Court ordered arbitration of certain issues and stayed further proceedings pending the arbitration decision.

On October 8, 2002, QIC filed a complaint in the United States District Court for the District of Minnesota, asserting federal copyright and service mark infringement claims, as well as state claims for breach of contract, tortious interference, and conversion, against Williams and Koch. Count III of the complaint also sought to compel arbitration of Williams' state claim for unpaid invoices.[1] At about the same time, QIC served a Demand for Arbitration on Williams and Koch for "separate" damages claims for breach of contract.[2] In March 2003, the Minnesota District Court transferred the underlying action to the Western District of Pennsylvania.

QIC's complaint sparked a long and complicated period of litigation which is not relevant to the issues presented to this Court. The relevant facts start with QIC's February 12, 2004, Rule 41(a)(2) motion to dismiss its own complaint. In opposition, Appellants argued that QIC waived its right to arbitration by bringing a claim for damages to federal court. The District Court gave QIC until March 12, 2004, to submit a

---

[1] This is the only count in the complaint to mention arbitration explicitly.

[2] Appellees assert that their federal complaint only sought equitable relief for Appellants' alleged breach of contract and did not seek damages. As such, they characterize their claims for monetary damages as "separate" and thus still subject to the arbitration clause in the PSAs.

3

reply to Appellants' opposition papers.  However, on March 10, 2004, without the benefit of QIC's reply, the District Court issued a Memorandum Opinion and Order denying the Motion to Dismiss and declaring that QIC had waived its right to arbitration. QIC responded by filing a Motion for Reconsideration on March 17, 2004.

On April 19, 2004, District Court granted the Motion for Reconsideration in part. The court reaffirmed that QIC waived its right to arbitrate all of the claims in the complaint but found that the complaint did not include claims for damages for breach of contract, thus leaving those claims for damages still subject to mandatory arbitration. Finally, the District Court dismissed the entire case with prejudice.[3]  Williams and Koch now appeal, arguing that the original complaint did seek damages for breach of contract and that the District Court thus erred in concluding that QIC did not waive its right to arbitration with respect to those claims.

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over the complaint's federal copyright and

---

[3] Appellants characterize the District Court's decision as an order compelling arbitration.. Appellants contend that the April 16, 2004, Order does "the functional equivalent" of compelling arbitration by dismissing the damage claims because they are "subject to mandatory arbitration." Reply Brief at 4.  Although the District Court ruled that the parties had not waived the right to arbitrate the damage claims, the Order does not by its terms compel arbitration.  It merely places the parties in the same position they were in prior to the initiation of any litigation – they are bound by their own contractual agreement, not by a court order, to arbitrate certain disputes between them.  The District Court Order essentially had three consequences: (1) QIC may no longer re-litigate any of the claims in its complaint; (2) QIC also waived the right to arbitrate the claims in its complaint; however (3) because QIC's complaint did not include claims for damages arising from Appellants' alleged breach, those claims must be brought, *if at all*, to an arbitrator.

4

service mark infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338, and had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The District Court also had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction over the timely appeal of the District Court's April 16, 2004, final order pursuant to 28 U.S.C. § 1291. Neither party disputes that, pursuant to the choice of law provisions of the PSAs, Minnesota law applies to the breach of contract claims. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

This Court reviews grants of voluntary dismissal under Fed. R. Civ. P. 41(a)(2) for abuse of discretion. Ferguson v. Eakle, 492 F.2d 26, 28-29 (3d Cir.1974) (citing Ockert v. Union Barge Line Corp., 190 F.2d 303, 304 (3d Cir. 1951)). Here, the District Court's grant of QIC's Rule 41(a)(2) motion depended on the determination that QIC did not waive its right to arbitration under Minnesota law. Therefore, we will find that the District Court abused its discretion only if that underlying determination was in error.[4]

## III. DISCUSSION

Both of the PSAs contain an unambiguous arbitration clause that requires the parties to arbitrate any claim for damages resulting from an alleged breach of the contracts.[5] Minnesota law dictates that parties who know of their right to arbitrate, act

---

[4] Appellants contend that we should exercise plenary review over the District Court's decision to compel arbitration. As mentioned in n.3, supra, however, the District Court order did not actually compel arbitration.

[5] Although the plain language of the arbitration clauses would seem to require arbitration of any claim alleging breach of the PSAs, Paragraph 8 of the PSAs makes clear that the parties may

5

inconsistently with that right, and prejudice the other party in doing so are deemed to have waived their arbitration rights. See Kelly v. Golden, 352 F.3d 344, 349 (8th Cir. 2003) (quoting Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993); Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cir. 1998)); Ill. Farmers Ins. Co. v. Glass Service Co., 683 N.W.2d 792, 798 (Minn. 2004). Such a waiver may be inferred under Minnesota law where a party "substantially invokes the litigation machinery before asserting its arbitration right." Kelly, 352 F.3d at 349 (quoting Ritzel, 989 F.2d at 969); Ill. Farmers, 683 N.W.2d at 798.

Here, QIC substantially invoked litigation by filing a complaint in federal court and thus waived its right to arbitrate at least those claims contained in the complaint. However, waiver of arbitration with respect to some claims need not constitute waiver of the right to arbitrate all claims that might arise between the parties. See, e.g., Savage v. Varey, 358 N.W.2d 102, 106 (Minn. Ct. App. 1984) (holding that the filing of cross-claims based in tort did not constitute waiver of all claims arising out of the parties' contracts). Therefore, if QIC never actually invoked litigation to resolve the issue of monetary damages for the breach of contract, the District Court was correct to conclude that QIC has not waived its right to arbitrate under Minnesota law.

The District Court concluded that QIC's complaint did not contain any claims for damages with respect to the alleged breach by Appellants. Appellants point out,

_____

bring claims for injunctive or equitable relief in a court notwithstanding the mandatory arbitration clause at Paragraph 9.

6

however, that the complaint does actually contain requests for relief in the form of damages. QIC responds that it sought damages only for its federal claims and its state claims of tortious interference and conversion. As noted by the District Court, the word "damages" appears in the complaint several times, which, when read in the context of the entire complaint, does create at least some ambiguity with respect to whether or not QIC also sought damages for breach of the PSAs.

First, Appellants point out that QIC's introductory "Nature of the Action" section states, "This is an action for damages, including actual and/or statutory damages, penalties, attorney's fees and costs, and equitable relief . . . ." QIC responds that this statement merely lists all of the forms of relief being requested in the lawsuit without delineating which forms of relief would (or would not) be requested in connection with each individual claim. Second, Counts IV and V of the complaint mention damages, stating, ". . . QIC has suffered additional damages, which continue to accrue in the form of attorneys' fees and costs related to this litigation, and any lost business in an amount to be determined at trial." Appellants argue that because Counts IV and V allege breach of contract, the quoted language evidences an intent to seek damages for breach of the PSAs. QIC maintains that it did not *request* monetary damages for breach of contract; rather, it mentioned damages "only to support QIC's assertion of irreparable harm warranting the issuance of injunctive relief." Brief for Appellee at 10. Finally, QIC's prayer for relief requests damages "sustained in consequence of . . . violations of

Minnesota Common Law." Appellants contend that this general reference to Minnesota Common Law claims should be read to include QIC's breach of contract claims. QIC counters that this reference was only meant to include its claims for tortious interference and conversion, not breach of contract.

At the same time, other portions of the complaint seem to evidence an intent to preserve QIC's right to arbitrate its contract damages claims. For example, Paragraph 4 explains the reach of the arbitration clauses and states that "QIC's claims for equitable relief and its statutory claims, including claims for copyright infringement and deceptive trade practices, fall outside of the parties' arbitration agreement and are asserted in this Complaint." Paragraph 4 continues, "QIC pursues its claims that are not subject to the parties' arbitration agreement, and seeks an order compelling arbitration in Minnesota of all claims that fall within the parties' agreements to arbitrate." Paragraphs 19 and 26 reiterate the distinction between claims for damages and claims for injunctive relief under the PSAs, stating that "QIC [is] entitled to seek injunctive relief in a court of competent jurisdiction to enforce the terms of the PSA[s]." Finally, Count III seeks to compel arbitration of Williams' state court claim because "[t]he only exception to [the] requirement that contractual disputes be arbitrated is that QIC is permitted, under the agreement, to seek injunctive relief in a court action."

The statements at Paragraphs 4, 19, 26, and 64 evidence an understanding that claims for damages were preempted by the arbitration agreements, that QIC intended to

8

retain the right to arbitrate those claims, and that QIC *only* intended to seek injunctive relief for its contract claims in the District Court because only injunctive relief was exempted from the arbitration agreement. In addition to the terms of the complaint, QIC's conduct, serving a Demand for Arbitration on Appellants two days after filing its complaint with the District Court, supports the argument that QIC intended to arbitrate those issues covered by the arbitration clauses even after bringing an action for exempted issues in the courts.

Presented with the conflicting language in the complaint, the District Court correctly found that whether or not QIC sought damages for breach of contract was ambiguous. The District Court also correctly found that arbitration is favored in both federal and Minnesota law. See 9 U.S.C. §1, et seq.; Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 795 (Minn. 1995). The District Court was therefore correct in its statement that "the Court must resolve any ambiguity in favor of arbitration." Quality Improvement Consultants, Inc., v. Williams, No. 03-393 at 3 (W.D. Pa. April 19, 2004) (citing Johnson, 530 N.W.2d at 795). We therefore hold that the Rule 41(a)(2) dismissal based on the finding that QIC did not waive its right to arbitrate under Minnesota law did not constitute an abuse of discretion.

For the foregoing reasons, we affirm.