**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BOSC, INC.; THOMAS WAYNE
HAYES,

      Plaintiffs Counter Defendants -
      Appellants,

v.

No. 16-2031

BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF BERNALILLO,

      Defendant Counterclaimant -
      Appellee.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:15-CV-01042-KG-LF)**
_____

Jared M. Burden (Frederic Dorwart, with him on the brief) Frederic Dorwart, Lawyers, Tulsa, Oklahoma, for Plaintiffs Counter Defendants-Appellants.

Clinton W. Marrs, Marrs Griebel Law, LTD., Albuquerque, New Mexico, for Defendant Counterclaimant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

A New Mexico county board filed a lawsuit in state court against its securities broker and registered agent. The board refrained, however, from serving process while it determined whether arbitration was available. The securities broker and agent nonetheless removed the case to federal court and moved to dismiss the suit. Four days after briefing was complete and about three months after the board had filed suit, the board voluntarily dismissed the case and filed for arbitration. The securities broker and agent then filed this action to enjoin arbitration, arguing the board waived its right to demand arbitration when it filed the state court action. The district court disagreed and instead granted the board's counterclaim to compel arbitration. The broker and registered agent appealed the waiver issue. Exercising jurisdiction under 9 U.S.C. § 16(a)(3), we affirm.

**I.**

In 2012 and 2013, BOSC, Inc., a registered securities broker and member of the Financial Industry Regulatory Authority (FINRA), and Thomas Hayes, one of BOSC's registered representatives, recommended and sold certain investments to the Board of County Commissioners of the County of Bernalillo, New Mexico ("the Board"). In July 2015, the Board filed a lawsuit in New Mexico state court against BOSC, Hayes, and others for allegedly selling it unsuitable investments and recommending investments that conflicted with Bernalillo County's liquidity needs, in violation of FINRA Rule 2111. The Board did not, however, serve the petition on any of the defendants. According to the Declaration of Clinton Marrs, the Board's attorney, he refrained from serving the

2

complaint because he had not yet "completed [his] inquiry into whether the Board was required or permitted by contract to arbitrate its claims." R. at 31.

In September 2015, BOSC and Hayes removed the case to federal court and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Board opposed the motion. In October, four days after briefing on the motion was complete and before the district court ruled on the motion, the Board voluntarily dismissed the case without prejudice because the Board's attorney was "satisfied that the Board could pursue its claims in arbitration." R. at 32. Four days after that, the Board initiated FINRA arbitration. Less than three months had lapsed from the time the Board filed the state court action to when it voluntarily dismissed it.

In November 2015, BOSC and Hayes filed this federal lawsuit against the Board for preliminary and permanent injunctive relief in an attempt to enjoin the Board from pursuing FINRA arbitration. BOSC and Hayes asserted that the Board waived its right to arbitration when it filed the state court action. The Board answered the complaint and filed a counterclaim for judgment compelling arbitration. In response, BOSC and Hayes asked the district court for the opportunity to conduct discovery regarding the Board's motivation for filing the state court action.

The district court denied BOSC and Hayes' requests for injunctive relief and instead granted the Board's counterclaim to compel arbitration. The district court applied the factors from *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988), to conclude the Board did not waive its option to arbitrate. The district

3

court also denied the discovery request, explaining that the Board's motivation for filing the state court action was irrelevant to the *Peterson* factors. BOSC and Hayes appealed.

**II.**

The parties do not dispute that the FINRA rules apply to them and would ordinarily permit the Board, as BOSC and Hayes' customer, the option to request arbitration. They also agree that the Federal Arbitration Act ("FAA") applies here. The primary issue is whether the Board waived its right to arbitrate. We review the district court's decision rejecting the waiver argument *de novo* but review the factual findings underlying that decision for clear error. *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016).

The FAA's primary substantive provision declares that a written agreement to arbitrate "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements," and creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25. Section 3 of the FAA obliges courts to stay litigation on matters the parties have agreed to arbitrate so long as the

4

applicant for the stay is not in default in proceeding with arbitration, while § 4 authorizes a court that otherwise has subject matter jurisdiction to compel arbitration. *See* 9 U.S.C. §§ 3 & 4.

We have recognized two forms of waiver, although we have only ever applied the second form: (1) when a party intentionally relinquishes or abandons its right to arbitration; (2) when a party's conduct in litigation forecloses its right to arbitrate. *See In re Cox*, 835 F.3d at 1205. The second form of waiver—based on a party's conduct—came first in this Circuit. In *Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado*, 614 F.2d 698 (10th Cir. 1980), this Circuit's "leading opinion" on waiver of the right to arbitrate, *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010), we explained there is "no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case." 614 F.2d at 702. We noted several factors useful in analyzing waiver, which we later summarized in *Peterson*:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Peterson*, 849 F.2d at 467–68 (alterations in original) (quoting *Reid Burton*, 614 F.2d at 702). We do not apply the *Peterson* factors mechanically so that "each factor is assessed

5

and the side with the greater number of favorable factors prevails," nor do we consider this list exhaustive or exclusive. *Hill*, 603 F.3d at 773. Instead, "these factors reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration," even when the party did not subjectively intend to do so. *Id.*

We then acknowledged the first form of waiver—based on a party's intent—in *Hill v. Ricoh* in 2010, but we have yet to apply it in any case as the basis for our holding. We explained that "a party should not be permitted to demand arbitration when it has previously waived its right to arbitrate in the narrow sense of waiver typically used in the criminal-law context, where a waiver is an 'intentional relinquishment or abandonment of a known right.'" *Hill*, 603 F.3d at 773 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)); *see also In re Cox*, 835 F.3d at 1205 ("A party can 'subjectively' waive its right to arbitration if it intentionally relinquishes or abandons that right; once it has done so, it has no right to demand arbitration later."). We commented that "[a] party's conduct may evince such an intentional relinquishment," such as when an employer refuses an employee's repeated requests to arbitrate but then demands arbitration when she files suit. *Hill*, 603 F.3d at 773 (analyzing *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005)). Such external conduct may reveal a party's intentions.

BOSC and Hayes first argue that the Board intentionally waived its right to demand arbitration when it filed the state court lawsuit. They urge us to adopt a bright-line rule that plaintiffs who later seek arbitration on the same issues have necessarily waived their right to arbitrate. Alternatively, they argue the *Peterson* factors support a

6

finding that the Board waived its right to arbitrate by its conduct. While BOSC and Hayes primarily argue we may rule in their favor as a matter of law, they argue in the alternative that the district court erred in denying their request for discovery regarding why the Board filed the original state court action in the first place. We address each of these arguments in turn.

**A.**

BOSC and Hayes argue that the Board's conduct in filing the original state action evinces its intent to waive its right to arbitrate. They urge the Court to apply a bright-line rule, rather than the *Peterson* factors, and hold that a party who files litigation intentionally abandons its right to arbitrate. They assert other circuits have so held.

The cases BOSC and Hayes cite in support of their bright-line rule do not convince us and, in fact, do not support such a strict rule under federal law at all. Take for example their reliance on the Second Circuit's 1933 case *Kraus Brothers Lumber Co. v. Louis Bossert & Sons*, 62 F.2d 1004 (2d Cir. 1933). There, the plaintiff corporation sued the defendant corporation in state court for the purchase price of some "small timbers." 62 F.2d at 1005. The defendant answered, alleged several defenses and counterclaims, and offered to submit the controversy to arbitration per the parties' agreement. The plaintiff noticed the case for trial, later moved unsuccessfully for a voluntary dismissal, and then attempted to accept the offer to arbitrate. The plaintiff then filed a suit in federal court to enforce the contract's arbitration clause. The defendant argued the plaintiff waived its right to arbitrate, but the district court nonetheless issued an order compelling arbitration. The Second Circuit affirmed. It first noted that "[t]he

7

state action was indeed a repudiation of the plaintiff's own promise to arbitrate; it gave the defendant an election, taking the plaintiff at its word, to put an end to the arbitration clause, or to insist upon performance." *Id.* at 1006. But because the defendant never expressly withdrew its offer to arbitrate, the plaintiff accepted the offer when it tried to discontinue the state court case and pursue arbitration. *Id.* The case turned on the defendants' offer to arbitrate, a situation admittedly not present here, but it shows that the Second Circuit considers the circumstances presented rather than applying a bright-line rule against plaintiffs who later request arbitration.

Subsequent Second Circuit decisions bear this out, with each case turning on the amount of litigation conducted after filing the case and the length of delay. *See Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291, 293 (2d Cir. 1965) ("The cases are altogether clear that the mere filing of an action for damages on a contract does not preclude a subsequent change of mind in favor of arbitration therein provided; the earliest point at which preclusion may be found is when the other party files an answer on the merits." (internal citations omitted)); *Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S.A.*, 243 F.2d 342, 348 (2d Cir. 1957) (holding that the plaintiff did not waive its right to arbitration when it filed suit because "the libel never got beyond the initial stage of filing; no party was served or entered appearance; no property was attached, no answer filed"); *cf. Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp.*, 126 F.2d 978, 989 (2d Cir. 1942) ("A plaintiff who brought suit on a contract, without seeking to avail himself of its arbitration clause, has been held to have waived his rights thereunder, so that he could not subsequently, *after a long delay*, ask the court . . . to stay the action

8

pending arbitration. *Within limits*, much might perhaps be said for such a holding, on the ground that a party should not thus first set in motion judicial proceedings and then arrest them." (emphasis added)).

Likewise, the Seventh Circuit case that BOSC and Hayes cite does not create a bright-line rule but rather a presumption that may be overcome. In *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995), the Seventh Circuit held that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a *presumptive* waiver of the right to arbitrate." *Id.* at 390 (emphasis added). In that case, the Seventh Circuit was faced with a defendant who removed to federal court, demanded and received almost two thousand documents in discovery but "dragged its heels in responding" to the plaintiff's discovery demands, and waited about five months after a trial date was set before demanding arbitration. *Id.* at 389. This conduct "manifested an intention to resolve the dispute through the processes of the federal court," and the defendant did not rebut the presumption that it had waived its right to arbitrate by electing to proceed judicially. *Id.* at 390, 391. But the Seventh Circuit mentioned several situations in which a party that invokes judicial process might nonetheless retain its right to arbitrate:

> We have said that invoking judicial process is *presumptive* waiver. For it is easy to imagine situations—they have arisen in previous cases—in which such invocation does not signify an intention to proceed in a court to the exclusion of arbitration. There might be doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run. Some issues might be arbitrable, and others not. The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed. We need

9

not try to be exhaustive. *It is enough to hold that while normally the decision to proceed in a judicial forum is a waiver of arbitration, a variety of circumstances may make the case abnormal, and then the district court should find no waiver or should permit a previous waiver to be rescinded.* In such a case prejudice to the other party, the party resisting arbitration, should weigh heavily in the decision whether to send the case to arbitration, as should the diligence or lack thereof of the party seeking arbitration—did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?

*Id.* at 390–91 (citations omitted) (second emphasis added).

The Seventh Circuit revisited its presumptive waiver rule in *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648 (7th Cir. 2000). There, the plaintiffs filed suit in state court and litigated their claims for several months. *Id.* at 651. The state court dismissed the complaint, but the plaintiffs waited several more months before filing a suit in federal court to formally demand arbitration. *Id.* The plaintiffs argued that they "never submitted their state court action for judgment," but the Seventh Circuit pointed out that, by filing suit (and, we assume, by serving process), the plaintiffs would be entitled to a default judgment if the defendants failed to respond to the suit. *Id.* at 651–52. The Seventh Circuit thus presumed the plaintiffs waived their right to arbitrate by filing the state court action and, because no special circumstances existed to rebut that presumption, held that their lack of diligence in seeking arbitration counseled against absolving them of their waiver. *Id.* at 653.

BOSC and Hayes' remaining cases, which rely on state rather than federal law, do not offer persuasive reasoning, if any reasoning at all, for adopting a bright-line rule. In *Quality Improvement Consultants, Inc. v. Williams*, 129 F. App'x 719 (3d Cir. 2005)

10

(unpublished), the Third Circuit applied Minnesota law and concluded the plaintiff "substantially invoked litigation by filing a complaint in federal court and thus waived its right to arbitrate at least those claims contained in the complaint," without offering any further analysis. *Id.* at 722. And in *WorldSource Coil Coating, Inc. v. McGraw Construction Co.*, 946 F.2d 473 (6th Cir. 1991), the Sixth Circuit applied Illinois law to hold that, "[u]nless authorized by contract, submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party." *Id.* at 479. While the majority addressed conduct inconsistent with the right to arbitrate, we find the dissent's reasoning more compelling as to why simply filing a lawsuit should not constitute automatic waiver:

> Under the rule announced by the majority, a party would be deemed to have waived arbitration if it filed a complaint containing arbitrable issues and then the following day, upon reconsideration, dismissed the matter pursuant to Fed. R. Civ. P. 41(a)(1). Such a result is clearly anomalous. The opposing party might not even have been served with the complaint. . . . Obviously, no Illinois courts [sic] has, or would, find that such actions constitute a waiver. If the mere filing of a complaint followed by immediate dismissal does not constitute submission of issues, *some* line drawing must be done. I conclude that in the context of waiver of arbitration, "submission of issues" under Illinois law means that the court is called on to *decide* the issue. Accordingly, the mere filing of a complaint would not constitute submission of an issue. A trial or dispositive motion would, on the other hand, constitute submission of an issue because the court (or jury) would be called on to decide an issue.

*Id.* at 483 (Gadola, J., dissenting).

We decline to adopt a bright-line rule of waiver just because a party has filed a lawsuit, primarily because the circumstances of this case demonstrate how such a rule would not be wise. Although the Board took a step towards choosing litigation over

11

arbitration when it filed the original state-court action, it stopped short of voluntarily submitting the issues to a court for decision by refraining from serving process on BOSC and Hayes. If the Board had done nothing else after filing, it would not have been entitled to default judgment but would have instead risked dismissal for failure to prosecute. *See* NMRA Rule 1-004 (requiring plaintiffs to serve process "with reasonable diligence"); NMRA Rule 1-041(E)(2) (providing that a court may, on its own motion, dismiss without prejudice an action if the party filing the action "has failed to take any significant action in connection with the action or claim within the previous one hundred and eighty (180 days)"). And the Board dismissed the action before a court could rule on the motion to dismiss, a motion that BOSC and Hayes took it upon themselves to file even when they had not yet been served. The Board did not voluntarily submit its claims to a court for decision; instead the Board attempted to prevent a court from deciding those claims while it determined if arbitration was available. We decline the invitation to create a bright-line rule simply because of the Board's prior status as a plaintiff.[1]

**B.**

We now turn to the *Peterson* factors to determine whether the Board waived its right to arbitrate through its conduct. Those factors include (1) whether the Board took actions inconsistent with its right to arbitrate; (2) the extent to which the Board substantially invoked the litigation machinery; (3) the length of the Board's delay before requesting arbitration and nearness to trial; (4) the claims the Board filed before

---

[1] This is not to say that serving process is the magic moment of waiver. As we do here, we will consider the facts of each case.

12

requesting arbitration[2]; (5) whether important intervening steps had taken place, such as the Board taking advantage of judicial procedures unavailable in arbitration; and (6) whether the delay affected, misled, or prejudiced BOSC and Hayes.[3] Our overarching consideration is "whether the party now seeking arbitration is improperly manipulating the judicial process." *Hill*, 603 F.3d at 773.

We hold the Board did not waive its right to arbitrate. First, the Board took *some* actions inconsistent with its right to demand arbitration: it filed the state court action involving the claims it now seeks to arbitrate and further filed a response to the motion to dismiss. But it did not go so far as to voluntarily submit its claims to a court for relief as

---

[2] This factor originally asks "whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings." *Peterson*, 849 F.2d at 467. Although we have yet to actually apply the *Peterson* factors to a plaintiff (as the Board was when it filed the original state court action), the test is theoretically not restricted to defendants. *Cf. Reid Burton*, 614 F.2d at 702 ("In determining whether a party to an arbitration agreement, *usually* a defendant, has waived its arbitration right . . . ." (emphasis added)). As the factors are not exhaustive or exclusive, *see Hill*, 603 F.3d at 773, we will adjust them as needed to analyze this case and the Board's prior status as a plaintiff.

[3] The parties suggest that this Circuit has not been entirely consistent in analyzing prejudice and its importance, at times describing it as just one factor courts *may* consider but at other times *requiring* a showing of substantial prejudice. *Compare Peterson*, 849 F.2d at 468 (listing, as one of six factors, "whether the delay 'affected, misled, or prejudiced' the opposing party," (quoting *Reid Burton*, 614 F.2d at 702)), *with Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 701 (10th Cir. 1989) (stating "[p]arties seeking to prove waiver of arbitration obligations bear a heavy burden; they must show substantial prejudice," and holding defendants had not waived their right to arbitrate when the plaintiffs "failed to meet their burden" to show they had suffered substantial prejudice), *and Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1361 (10th Cir. 1971) (stating the "question of waiver turns on the presence or absence of prejudice"). We need not address the parties' suggestion today. Even assuming there is a difference between *Adams*' sole reliance on prejudice and *Peterson*'s listing of prejudice as just one of many factors, the outcome here is the same.

it refrained from serving BOSC and Hayes and further dismissed the case entirely before the district court could rule on the motion to dismiss. *See Farr & Co.*, 243 F.2d at 348 (holding a plaintiff did not waive its right to arbitrate because the suit "never got beyond the initial stage of filing; no party was served or entered appearance; no property was attached, no answer filed"). As to the second factor, the Board's conduct in filing the state court action may have invoked the litigation machinery as the Board took at least the first step to litigate rather than arbitrate, but we cannot say it "substantially invoked" that machinery here. On the contrary, what got the ball rolling was BOSC and Hayes' removal to federal court and their filing of a motion to dismiss even though they had not been served. Third, no trial date was nearing (or had even been set), and a mere three months passed from the day the Board filed the case to the day it dismissed it voluntarily. *See Hill*, 603 F.3d at 775 (stating a delay of four months was insufficient to establish waiver). In the fourth factor, we again acknowledge that the Board filed claims addressing the same issues it now seeks to arbitrate, but we reiterate that it did not voluntarily submit those claims for decision because it refrained from serving BOSC and Hayes. As to the fifth factor, not much had happened in the case before the Board dismissed it and sought arbitration. The district court had not held any hearings nor set any pretrial or trial deadlines. The parties did not participate in any "judicial discovery procedures not available in arbitration," as they did not participate in any discovery at all. During the three months the case was pending, the parties completed briefing on the motion to dismiss, but the Board dismissed the case shortly after briefing was completed, thereby avoiding significant inefficiencies that would have resulted had it submitted its

14

claims for decision before both the court and an arbitrator. *See id.* (stating "very little" had happened in litigation before the arbitration demand).

As to the final factor, the Board's delay in filing for arbitration minimally affected, misled, or prejudiced BOSC and Hayes, and that prejudice was predominately self-inflicted. BOSC and Hayes assert they incurred significant expense in analyzing the original state court action, preparing and filing the motion to dismiss, analyzing the Board's response to that motion, and preparing and filing its reply. But the time and expense BOSC and Hayes expended were primarily self-induced. Had they done nothing, the Board would have had to eventually decide whether to serve process and kick off the litigation or risk dismissal for failure to prosecute. We do not mean to discourage defendants from pursuing all their options in a timely manner, but we will not fault the Board for BOSC and Hayes's decision to move forward despite having not been served. Next, BOSC and Hayes complain that FINRA arbitration does not allow them to obtain summary relief for frivolous claims or to obtain relief from the improper joinder of parties, whereas civil litigation allows those procedures. But these concerns do not stem from the Board's delay in requesting arbitration; BOSC and Hayes would face these same challenges had the Board filed for arbitration in the first place. BOSC and Hayes next assert the Board delayed effecting service of process or giving notice of the filing of the state court action, and at the same time, presented witnesses for depositions and engaged in document discovery in a New Mexico Securities Division enforcement proceeding against BOSC, Hayes, and others. We do not see how BOSC and Hayes believe this prejudiced them, particularly because the Board did not initiate the enforcement

15

proceeding. Finally, BOSC and Hayes assert that FINRA Rule 4530 required them to report the litigation to FINRA, but they fail to mention that the same rule would have required them to likewise report arbitration. *See* FINRA Rule 4530(a)(1)(G) (requiring a FINRA member to report to FINRA when it is involved in civil litigation *or* arbitration).

Taking all this into consideration, we conclude the Board was not improperly manipulating the judicial process. Had it attempted to submit its claims to a court for decision and only sought arbitration after being unhappy with the result, we might feel differently. But as things stand, we do not find that litigation had proceeded too far, that significant inefficiencies would result, or that BOSC and Hayes were prejudiced by the delay. *See In re Cox*, 835 F.3d at 1205. That said, we stress that parties who find themselves in the Board's position should promptly consider whether arbitration is available before filing suit:

> In general, we do not look kindly upon parties who use federal courts to advance their causes and then seek to finish their suits in the alternative fora that they could have proceeded to immediately. Such actions waste the time of both the courts and the opposing parties. The decision whether to arbitrate is one best made at the onset of the case, and not part way through . . . . The attempt of [a party's] attorneys to switch judicial horses in midstream either shows poor judgment, if planned, or poor foresight, if not.

*Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (staying the litigation pending arbitration notwithstanding its admonition to the party). Parties can avoid the risk of waiver if they refrain from filing suit unless extraordinary circumstances require them to do so.

16

**III.**

Because we have not ruled as a matter of law in BOSC and Hayes' favor, we turn to their alternative argument that the district court erred in refusing to allow them to conduct discovery "on several key topics necessary to a *Peterson* analysis." Brief for Appellant at 30; *see also id.* at 9 (arguing the "District Court erred in refusing to grant BOSC and Hayes the opportunity to conduct discovery on the factual matters which are relevant to a *Peterson* analysis").

Before reviewing the district court's discovery denial, we address the proper procedure under the FAA. The Board filed a Counterclaim for Judgment Compelling FINRA Arbitration under 9 U.S.C. § 4. BOSC and Hayes have treated this counterclaim as a motion for summary judgment and support their request for discovery with a Federal Rule of Civil Procedure 56(d) affidavit, but they misunderstand the correct procedure.[4] While certain procedures under § 4 of the FAA "can look a lot like summary judgment," a motion to compel arbitration sets in motion a summary trial procedure rather than the usual discovery procedures. *Howard v. Ferrellgas Partners*, 748 F.3d 975, 978 (10th Cir. 2014).

Under § 4, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United

---

[4] The Board may have also misunderstood the proper procedure. During oral argument before the district court, the Board stated: "BOSC correctly understood the counter-motion as a Rule 56 motion. It's governed by Rule 56 standards." R. at 98. But on appeal, the Board corrected its error and explained that § 4 of the FAA governs here, not Rule 56, although the FAA's summary trial "resembles summary judgment practice." Brief for Appellee at 45.

17

States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . ., for an order directing that such arbitration proceed in the manner provided for in such agreement." When "the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," but when "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id*. This "framework is similar to summary judgment practice": the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (addressing the FAA procedure when the existence of an agreement to arbitrate is at issue); 9 U.S.C. § 4 (providing the same procedure when the "failure, neglect, or refusal to perform" the arbitration agreement is at issue). When "a quick look at the case" reveals that "no material disputes of fact exist," a district court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Howard*, 748 F.3d at 978. But if "material disputes of fact *do* exist," the FAA "calls for a *summary trial*—not death by discovery." *Id*. (emphasis in original). Unless "the party alleged to be in default" demands a jury, the district

court "shall hear and determine" the questions at issue. 9 U.S.C. § 4. The object of § 4 is "to decide quickly—summarily—the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute." *Howard*, 748 F.3d at 977.

We review *de novo* a district court's decision to deny a summary trial on factual questions at issue under 9 U.S.C. § 4. *See Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (providing for *de novo* review of a district court's decision to "deny a jury trial on the factual question of whether the parties agreed to arbitrate"). Applying the same standard as the district court, we give the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise." *Hancock*, 701 F.3d at 1261 (internal quotation marks omitted).

Here, the Board as the "aggrieved party" petitioned the district court for an order compelling arbitration after BOSC and Hayes allegedly "fail[ed], neglect[ed], or refus[ed]" to arbitrate. Put into the correct context of the FAA, we understand BOSC and Hayes to be arguing that their "failure to comply" with the arbitration agreement *is* at issue. That is, if the Board waived its right to demand arbitration, then BOSC and Hayes are not at fault in failing, neglecting, or refusing to arbitrate. "[R]ound after round of discovery and motions practice isn't the answer," *Howard*, 748 F.3d at 978, but the district court may have erred by not proceeding to a summary trial *if* BOSC and Hayes can actually establish a genuine dispute as to whether the Board waived its right to demand arbitration. They attempt to raise a material factual dispute by asking the Board questions such as whether the Board (as

19

compared to its attorney) authorized filing the state court action, was aware of its right to arbitrate and used the state court action as a litigation tactic, and dismissed the state court action only after considering the merits of the motion to dismiss. The district court denied discovery (and in effect, a summary trial), concluding that BOSC and Hayes' requests were aimed at the Board's motivations, and thus, were irrelevant to the *Peterson* factors.

The district court was correct. The *Peterson* factors analyze a party's conduct—that is, that party's external actions showing that it waived its right to demand arbitration even if it did not subjectively intend to do so. Whether it was in the form of discovery or a summary trial, the questions BOSC and Hayes wanted to ask would not change the *Peterson* analysis. We need not delve into whether a summary trial may be available to demonstrate that a party intentionally waived its right to arbitrate, because BOSC and Hayes have not asked us for that relief.[5]

### IV.

We AFFIRM the judgment of the district court. The Board did not waive its right to demand arbitration, and thus, the district court properly entered judgment in the Board's favor on its counterclaim to compel arbitration.

---

[5] For a district court to grant a summary trial, the party opposing arbitration must show that a material factual dispute exists. We are not saying, one way or the other, whether BOSC and Hayes met that threshold showing here as to whether the Board intentionally waived its right to arbitrate. We likewise do not comment on what questions regarding motivation a party opposing arbitration may ask at a summary trial to determine whether the opposing party has intentionally waived its right to demand arbitration.

20