**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

NELSON STONE; STONE FAMILY,
LLC,

     Plaintiffs - Appellants,

v.

VAIL RESORTS DEVELOPMENT
COMPANY; ARRABELLE AT VAIL
SQUARE, LLC,

     Defendants - Appellees.

No. 23-1147
(D.C. No. 1:09-CV-02081-DDD-KLM)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

Nelson Stone, M.D., and the Stone Family LLC (collectively, "the Stones")

agreed to buy a condominium from Vail Resorts Development Company and

Arrabelle at Vail Square, LLC (collectively, "Vail").  The Stones later filed a breach

of contract claim against Vail, and the district court compelled arbitration.  The

arbitrator found Vail had breached the contract and awarded the Stones damages.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The arbitrator initially awarded the Stones attorney fees but then reversed course, stating that he "d[id] not possess the requisite jurisdiction to grant fees and costs in th[e] dispute." App., Vol. IX at 2247.

The Stones filed a "motion to determine the arbitrability of fees" in the district court. App., Vol. VIII at 1938-49. The court denied the motion as untimely. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*

The Stones entered into a Purchase and Sale Agreement ("PSA") with Vail to buy a condominium. The PSA provided that the prevailing party in any arbitration enforcing or interpreting the agreement would receive attorney fees.

The PSA incorporated a draft "Reciprocal Easements and Covenants Agreement" ("RECA") and a draft "Condominium Declaration." The draft RECA provided assigned self-parking to condominium owners.

The PSA required Vail to adopt a final RECA that was "substantially similar" to the draft RECA. App., Vol. IX at 2174. The final RECA provided valet parking instead of assigned self-parking.

The final Condominium Declaration provided "[m]andatory [p]rocedures" for resolving "all Claims arising out of or relating to the interpretation, application, or

2

enforcement of th[e] Declaration." App., Vol. II at 337.[1] These procedures included (1) final and binding arbitration if attempts to mediate disputes failed and (2) waiver of any right to attorney fees in connection with the arbitration.

The parties closed the transaction when they signed a special warranty deed that sold and conveyed the condominium to the Stones subject to the final RECA and Condominium Declaration.

## B. *Procedural History*

### 1. **Initial District Court Proceedings**

In their federal diversity action, the Stones alleged that Vail breached the PSA because valet parking was not "substantially similar" to assigned self-parking. App., Vol. I at 24-26; App., Vol. IX at 2094-96.[2] The Stones also sought attorney fees. App., Vol. I at 32; App., Vol. IX at 2100.[3]

Vail moved to compel arbitration, which the district court granted. Applying the Federal Arbitration Act ("FAA"), App., Vol. III at 523, the district court found

---

[1] Any differences between the draft and the final Condominium Declaration are not relevant to this appeal.

[2] The Stones alleged that this change reduced the value of their condominium and increased their condominium association dues.

[3] The Stones initially filed a class action complaint, suing individually and on behalf of all others similarly situated. But the Condominium Declaration contained a class action waiver that the arbitrator upheld, so the Stones proceeded individually.

The Stones also brought claims for fraud, deceptive trade practices, and negligent misrepresentation. The arbitrator dismissed these claims, and they are not relevant to this appeal.

the Stones' claims were subject to arbitration because they fell "within the broad purview of the arbitration provision," *id.* at 526. The court also found the parties "agreed to abide by Colorado rules of arbitration," *id.* at 523, and ordered the parties to "proceed with arbitration in accordance with the . . . arbitration clause," *id.* at 529. The parties proceeded to arbitration.

2. **Arbitration**

After prolonged proceedings, the arbitrator filed an Interim Arbitration Award, which entered judgment for the Stones on their breach of contract claim and gave the parties 15 days to file post-arbitration motions relating to costs, fees, interest, and other matters.

After considering the resulting motions, the arbitrator filed a Final Arbitration Award that granted attorney fees to the Stones as the "prevailing party" under the PSA. App., Vol IX at 2125, 2131. Less than a week later, on April 4, 2019, the arbitrator reversed course and issued a Revised Final Arbitration Award, which concluded:

> It is well settled that the scope of an arbiter's jurisdiction is determined by the express language of the contractual document affording arbitration in the first instance. The United States District Court has expressly stated that the operative document determining the scope of the arbiter's jurisdiction in this matter is the Condominium Declaration. Upon further analysis of the operative documents and applicable law, *the arbiter reverses the [initial attorney fees order]. The arbiter does not possess the requisite jurisdiction to grant fees and costs in this dispute.* To the extent [the Stones] are entitled to fees and costs under the PSA is a circumstance for which authority does not exist within the confines of this arbitration.

4

*Id.* at 2247 (emphasis added).

3. **Post-Arbitration District Court Proceedings**

On August 20, 2019—138 days after the arbitrator's Revised Final Arbitration Award—the Stones filed in district court a "[m]otion to determine the arbitrability of attorney[] fees." App., Vol. VIII at 1941. They asked the court to "confirm that the [arbitrator's] jurisdiction includes the authority to award fees under the PSA for any breach of the PSA." *Id.*

The court said the motion was "in essence a request to modify the arbitrator's decision" that attorney fees were not available. App., Vol. X at 2422. It held the motion was time barred under Colo. Rev. Stat. §§ 13-22-223(2) and 13-22-224(1). Those statutes give parties 91 days to file a motion to vacate or a motion to modify or correct, respectively, after the parties receive notice of the award.[4] The court then confirmed the award.

The Stones brought this appeal. They argue that their motion was not a motion to vacate or modify the award but instead was a motion to compel arbitration, which can be filed at any time. They also argue they were entitled to attorney fees under the PSA and Colorado law.

---

[4] The district court also determined, deferring to the arbitrator's interpretation of the Condominium Declaration and PSA, that it "should [not] grant [the Stones] leave to seek fees in [the district court]" outside of the arbitration proceedings. App., Vol. X at 2422-43. Because the district court correctly determined the Stones' motion was untimely, it did not need to reach this issue, and neither do we.

## II. **DISCUSSION**

"Arbitration is a method of dispute resolution in which the parties submit a dispute to an impartial person selected by the parties."  1 Martin Domke et al., *Domke on Commercial Arbitration* § 3:11 (2023).  It occurs as "a matter of contract between the parties."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

An issue is "arbitrable" if an arbitrator has the power to resolve it.  *See* 1 Domke, *supra* §§ 15:8, 15:2, 39:13.  "[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute . . . ."  *Kaplan*, 514 U.S. at 943.  Courts examine parties' arbitration agreements to determine which issues are arbitrable.  *See id.* (holding that if the parties did not contract for an arbitrator to decide arbitrability, the court decides the issue); *Johnson-Linzy v. Conifer Care Cmtys. A, LLC*, 469 P.3d 537, 541 (Colo. App. 2020) (explaining that, under Colorado law, the court determines arbitrability unless the parties plainly and unambiguously contract for the arbitrator to do so).

An arbitration "award is the final decision of the arbitrator in the settlement of a dispute."  2 Domke, *supra* § 33:1; *see, e.g.*, *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 580 (2008) (referring to the arbitration award and the arbitrator's decision interchangeably).

### A.  *Legal Background*

The following provides legal background relevant to this appeal.

1. **FAA and State Law**

The FAA governs the enforcement of written provisions to arbitrate in contracts involving "commerce."  9 U.S.C. § 2 (stating that such provisions are "valid, irrevocable, and enforceable"); *Hall St. Assocs.*, 552 U.S. at 582.  The Act "create[d] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Apart from the FAA's enforcement provisions, parties may contract to conduct arbitration proceedings under a state's laws instead of the FAA.  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989).  The Colorado Revised Uniform Arbitration Act ("CRUAA") governs arbitrations under Colorado law.  Colo. Rev. Stat. § 13-22-206.

Because the Stones and Vail "agreed to abide by Colorado rules of arbitration" in the arbitration clause, App., Vol. III at 523; App., Vol. II at 339, the FAA governed enforcement of their arbitration agreement, and Colorado law governed the arbitration proceedings, *see Volt Info. Scis., Inc.*, 489 U.S. at 475.

2. **Motions to Compel Arbitration**

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may" move the district court to compel arbitration.  9 U.S.C. § 4.  "[T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and *the opposing party's failure*, neglect, or

refusal to arbitrate . . . ."  *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (emphasis added); *see also Perry v. Thomas*, 482 U.S. 483, 485 n.1 (1987) ("Section 4 mandates judicial enforcement of arbitration agreements where a party has failed, neglected, or refused to arbitrate.").

The court, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  An order granting a § 4 motion is directed at the parties to arbitrate and not at the arbitrator.  *See, e.g.*, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 ("An indispensable element of [the party's] cause of action under § 4 for an arbitration order is the [other party's] refusal to arbitrate."); *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (affirming a denial of a motion to compel arbitration where the other party did not refuse to arbitrate).

3.  **Motions to Vacate Arbitration Awards**

Colorado law provides recourse for parties to challenge an arbitrator's final award on certain enumerated grounds.  Relevant here, a party may move for the district court to vacate the award if:

> (a)  The award was procured by corruption, fraud, or other undue means;
> (b)  There was:
>   (I)   Evident partiality by an arbitrator appointed as a neutral arbitrator;
>   (II)  Corruption by an arbitrator; or
>   (III) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
> (c)  An arbitrator refused to postpone the hearing . . .

8

(d) *An arbitrator exceeded the arbitrator's powers*;

(e) There was no agreement to arbitrate . . .

(f) The arbitration was conducted without proper notice of the initiation of an arbitration . . . .

Colo. Rev. Stat. § 13-22-223(1) (emphasis added).  A motion to vacate the award must be filed "within ninety-one days after the movant receives notice of the award." *Id.* § 13-22-223(2).

## B. *Analysis*

The Stones argue their motion to determine the arbitrability of fees was a motion to compel arbitration and was therefore timely.  Aplt. Br. at 15-22.[5]  We disagree.

### 1. **The Stones Moved to Vacate**

We must determine the nature of the Stones' motion "by the quality of its substance rather than according to its form or label," *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 12 F.4th 1212, 1229 (10th Cir. 2021) (quotations omitted), by examining "the essential attributes of the [motion] itself," *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1385 (10th Cir. 2009).

Before the Stones filed their motion, the arbitrator had decided that he lacked "the requisite jurisdiction to grant fees and costs in th[e] dispute."  App., Vol. IX at 2247.  The Stones' motion asked the court to "determine the arbitrability of

---

[5] The parties do not dispute the facts underlying the issues on appeal.  We therefore review de novo what type of motion the Stones filed and whether it was timely.

attorney[] fees" and "confirm that the [arbitrator's] jurisdiction includes the authority to award fees." App., Vol. VIII at 1941; *see also id.* at 1944, 1946, 1948.

The Stones argued that the "[c]ourt must determine the arbitrability of the fee award because the Condo[minimum] Declaration does not expressly reserve that right to the [arbitrator]." *Id.* at 1946. They substantively contended the arbitrator erroneously "exceeded [his] powers," Colo. Rev. Stat. § 13-22-223(1)(d), which is an enumerated ground to vacate an award, not to compel arbitration.

To provide the Stones' requested relief, the district court would have needed to vacate the arbitrator's decision that he lacked the authority to grant attorney fees. The Stones admit as much on appeal—they argue the arbitrator "found he did not have authority to decide attorneys[] fees." Aplt. Br. at 16; *see id.* at 23-24; Aplt. Reply Br. at 10-12. The court thus could direct the arbitrator to arbitrate only if it first reversed and vacated the arbitrator's decision that he could not do so. Because the Stones' motion argued the arbitrator exceeded his powers and asked the court to reverse the arbitrator's decision, it substantively asked to vacate the award. *Dodson Int'l Parts, Inc.*, 12 F.4th at 1229.[6]

## 2. **The Stones' Arguments**

We next turn to the Stones' arguments to the contrary, which are unavailing.

---

[6] The district court said that the motion was "in essence a request to modify the arbitrator's decision." App., Vol. X at 2422. We affirm on the ground that the Stones moved to vacate.

First, the Stones contend they filed a motion to compel arbitration under § 4 of the FAA. Aplt. Br. at 20-21. But a § 4 motion seeks to compel a party to arbitrate. When a party refuses to comply with a valid arbitration agreement, § 4 requires the court to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Vail never refused to arbitrate attorney fees, and the Stones' motion did not seek to compel Vail to arbitrate. They sought an order to vacate the arbitrator's decision that he lacked authority to grant attorney fees and to direct the arbitrator to arbitrate attorney fees. App., Vol. VIII at 1941, 1944-48; Aplt. Br. at 33. Their motion thus was not an FAA § 4 motion to compel a party to engage in arbitration.

Second, the Stones argue that their motion did not seek to vacate, modify, or correct the award because the arbitrator did not grant or deny attorney fees. Aplt. Br. at 16-17. But an arbitrator's decision is an award. 2 Domke, *supra* § 33:1. The arbitrator decided here that he lacked authority to award attorney fees. The Stones wanted the district court to direct the arbitrator to arbitrate attorney fees, but, as explained above, the court would first need to vacate the arbitrator's award deciding he did not have the authority to grant fees. Again, the Stones moved to vacate the award.

Third, the Stones argue that "[t]he CRUAA confirms that there was nothing for the Stones to vacate, amend, or modify" because none of the CRUAA's enumerated grounds apply. Aplt. Br. at 17. But the Stones' district court motion matched an enumerated ground to vacate the award—that the "arbitrator exceeded the arbitrator's

11

powers." Colo. Rev. Stat. § 13-22-223(1)(d). They insisted that the court "must determine the arbitrability of the fee award because the Condo[minimum] Declaration d[id] not expressly reserve this right to the [arbitrator]," App., Vol. VIII at 1946—an argument that the arbitrator did not have the power to determine arbitrability and therefore exceeded his powers in doing so.

### 3. **The Stones' Motion Was Untimely**

Because the Stones' motion asked the district court to vacate the arbitrator's determination that attorney fees were not arbitrable, their motion was untimely. Under Colo. Rev. Stat. § 13-22-224(1), parties have 91 days after receiving notice of the arbitrator's award to file a motion to vacate. The Stones filed their motion 138 days after they received notice of the arbitrator's attorney fees decision. Their motion is therefore time barred, and we will not reach its merits. *See State Farm Mut. Auto. Ins. Co. v. Cabs, Inc.*, 751 P.2d 61, 67 (Colo. 1988).

## III. **CONCLUSION**

The Stones untimely moved the district court to vacate the arbitration award. We affirm.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

12